IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

HORATIO D. BURFORD )
    v. ) NO. 3:11-0115
)
SONYA TROUTT and SONNY )
WEATHERFORD )

TO: Honorable William J. Haynes, Jr., District Judge

## REPORT AND RECOMMENDATION

By Order entered February 15, 2011 (Docket Entry No. 3), this prisoner civil rights action was referred to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

A Scheduling Order was entered March 22, 2011 (Docket Entry No. 13), setting deadlines for the progression of the case and scheduling an evidentiary hearing on September 28, 2011. By Order entered September 23, 2011 (Docket Entry No. 27), the evidentiary hearing was rescheduled and held on October 26, 2011. Set out below are the Court's findings and recommendation for disposition of the action.

# I. BACKGROUND

Plaintiff is an inmate of the Tennessee Department of Correction ("TDOC") currently incarcerated at the Morgan County Correctional Complex ("MCCC"). On February 8, 2011, he filed this action pro se and in forma pauperis under 42 U.S.C. § 1983 against Sonya Troutt and Sonny Weatherford in their official capacities. The complaint is based on events which occurred while Plaintiff was confined the Sumner County, Tennessee Jail ("Jail"). Defendant Troutt is the Jail Administrator and Defendant Weatherford is the Sheriff of Sumner County, Tennessee. Plaintiff does not seek damages, and the only relief requested by Plaintiff is set out by him as follows: (A) "I'm requesting proper practice of any religion;" (B) "That aide be assisted to any religions;" (C) "Stop showing prejudices against Islam." See Complaint (Docket Entry No. 1), at 5.

Plaintiff asserts that he is a Muslim and makes three specific claims that his First Amendment religious rights were violated at the Jail:

> 1. On January 22, 2011, inmates, including Plaintiff, who did not attend a church service that was being held in the communal cell block living area were required to be locked in their cells during the service;
>
> 2. He was "denied my religious act to practice my religion . . . the way I should" and was prevented by the Jail Chaplain from holding a study assembly for inmates who want to practice Islam because the Chaplain does not agree with any religion except Christianity; and
>
> 3. He was not permitted to wear a Kufi head dressing yet Christian inmates were allowed to have crosses in the Jail.

See Complaint (Docket Entry No. 1), at 5.

By the Order of referral, process was issued to the Defendants on Plaintiff's constitutional claims. The Defendants filed an answer (Docket Entry No. 11) and a scheduling order (Docket Entry No. 13) was entered to facilitate pre-trial activity in the action. No dispositive motions were filed by

the Defendants, and there are no motions currently pending before the Court. The plaintiff requests a jury trial.[1]

## II. FACTUAL FINDINGS

At the evidentiary hearing, Plaintiff proceeded pro se. He testified, as did Defendant Sonya Troutt.

Plaintiff was a TDOC inmate who was paroled in May 2010. At the time of his parole, he had a pending detainer for a misdemeanor sentence in Sumner County and was taken to the Jail in June of 2010, to begin serving that sentence. He remained at the Jail until he was released on March 11, 2011. In September 2011, he returned to the Jail for a brief period after violating his parole and he was thereafter returned to the custody of the TDOC. He testified that his current sentence will expire in September or October of 2012. Plaintiff testified that he had been confined at the Jail on other occasions prior to 2010.

Plaintiff testified that he became a Muslim in February 2009, while confined within the TDOC. When he returned to the Jail in June 2010, he wanted to continue to wear an Islamic head covering called a Kufi, but was told by Captain Canter and Defendant Troutt that he was not permitted to wear a Kufi because Jail policy does not permit inmates to wear head coverings. He testified that he questioned this policy because inmates on trustee status at the Jail were permitted to wear street clothes and hats. Defendant Troutt testified that the Jail's policy is that inmates in the general population are not permitted to wear any type of head covering because of security concerns

---

[1] Although the Scheduling Order entered March 22, 2011, provided that a jury trial had not been requested in the action, see Docket Entry No. 13, at 4, Plaintiff made a request in his complaint for a jury trial. See Docket Entry No. 1, at 5.

3

regarding hiding contraband and regarding possible gang issues associated with the colors of head coverings. However, Defendant Troutt explained that inmates who have trustee status at the Jail are housed in a separate area and are permitted to wear caps when they go outside the Jail, but they are not allowed to wear caps in the Jail.

The Jail has a policy of permitting volunteer religious groups to come into the Jail to minister to or counsel inmates. Troutt testified that such groups must be approved by the Jail administration and are scheduled for one hour visits at the Jail. Troutt testified that the Jail administration does not solicit such volunteers and that all faiths are permitted to submit volunteer requests. Troutt testified that the Jail receives a large number of volunteer requests and that representatives of such groups are usually at the Jail up to four times a week, but that the volunteers are rotated through the Jail's thirteen housing pods and three trustee areas so that they are not continually in one pod. The Jail's policy is that the volunteer services are conducted in the open day room area of a housing pod and that inmates who do not wish to participate in the service are required to return to their cells until the conclusion of the service. Troutt testified that the purpose of this policy was to permit the services to be conducted without disruptions, to allow privacy during the services, and to lessen interactions between the volunteers and inmates who might want to "debate" with the volunteer.

Plaintiff testified that he was forced to return to his cell on one occasion when a Seventh-Day Adventist group was holding a religious service in his housing pod area. Plaintiff testified that he did not like this because he felt that it was "pushing another religion over on me," because he had less personal time in the "rec area," and because he believed the service could have been held in another room at the Jail without using the day room area.

4

Plaintiff also testified that he was not permitted to meet with other Islamic inmates who were housed in different areas of the Jail. Plaintiff testified group study meetings regarding Islam are an important part of his faith and allow him to help other Islamic inmates learn to pray and to read Arabic. Plaintiff testified that the only inmates with whom he was permitted to meet were those in his own housing pod. Defendant Troutt testified that Plaintiff could meet, study, or pray with any inmate in his housing pod as long as it was conducted in the day room area. She testified that Jail policy does not permit an inmate to go into the cell of another inmate and that inmates are not permitted to go into different housing pods.

The testimony showed that Bob Browne, a volunteer Christian chaplain, regularly came to the Jail to counsel and minister to inmates and was permitted to pass out religious literature to inmates. Plaintiff testified that he approached Browne on one occasion about help in getting Islamic books but that Brown refused to help him because Browne "didn't agree with [Plaintiff's] religion." Plaintiff testified that he was able to obtain an Islamic Koran sent to him at the Jail from another source and that the Jail administration permitted him to have the book.

Plaintiff testified that he was never prevented from worshiping or praying in his cell while at the Jail and that he was able to have a Koran and other religious literature that he brought with him to the Jail. Defendant Troutt testified that Plaintiff was also approved to have a prayer rug in his cell while at the Jail. Plaintiff admitted that he never made a request to have an Islamic leader come to the Jail as a volunteer.

### III. CONCLUSIONS

The purpose of the evidentiary hearing is to inquire into the factual basis of Plaintiff's claims. Johnson v. Bi-State Justice Ctr., 12 F.3d 133, 135-36 (8th Cir. 1993). After review of the evidence presented at the hearing and of the entire record in this action, the Court finds that, even when the disputed facts and all inferences are construed in Plaintiff's favor, the evidence in support of his claims is insufficient to warrant submitting the claims to a jury.

Initially, the Court notes that Plaintiff does not seek either compensatory or nominal damages, and the only reasonable reading of his prayer for relief is that he requests prospective injunctive relief to safeguard the ability of inmates at the Jail to practice their religious views. However, Plaintiff is currently a TDOC inmate and is no longer incarcerated at the Jail. As such, there is no longer an active case or controversy which exists between the parties and which can be remedied by the relief requested in this action. Plaintiff's past exposure to alleged illegal conduct "does not in itself show a present case or controversy regarding injunctive relief." O'Shea v. Littleton, 414 U.S. 488, 495, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Further, although Plaintiff testified that he had been confined at the Jail on several occasions in the past, there is no evidence that he will return to the Jail again in the future, and he has not shown that there is a real and immediate threat that he will suffer a future injury due to the alleged wrongdoing. Thus, he has no standing to seek prospective injunctive relief. See City of Los Angeles v. Lyons, 461 U.S. 95, 102-09, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); Blakely v. United States, 276 F.3d 853, 873-74 (6th Cir. 2002); Williams v. Ellington, 936 F.2d 881, 889 (6th Cir. 1991). There is no basis upon which to conclude that Plaintiff will personally benefit in any manner from the relief requested in this action, which has essentially become moot. See Jordan v. Sosa, 654 F.3d 1012, 1023-1035 (10th Cir. 2011); Ortiz v. Downey, 561 F.3d 664, 668 (7th

6

Cir. 2009); Bowman v. Corrections Corp. of America, 350 F.3d 537, 449-550 (6th Cir. 2003); Brooks v. Celeste, 201 F.3d 440, 1999 WL 1204879 (6th Cir. Dec. 8, 1999). For this reason alone, the action warrants dismissal.

However, even if Plaintiff had requested damages, the Court finds that there is no evidence before the Court upon which any reasonable jury could find that Plaintiff's First Amendment rights were violated. Although prison inmates do not lose their First Amendment right to exercise their religion because of incarceration, Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987), "the circumstances of prison life may require some restriction on prisoners' exercise of their religious beliefs." Walker v. Mintzes, 771 F.2d 920, 929 (6th Cir. 1985). The First Amendment does not require that prison officials provide inmates with the best possible means of exercising their religious beliefs nor does it require that general prison policies and concerns become subordinate to the religious desires of any particular inmate, and the internal administration of a correctional facility is a function legitimately left to the discretion of prison administrators. See Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Procunier v. Martinez, 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). The governing standard is one of reasonableness, taking into account whether the particular policy at issue is "reasonably related to legitimate penological interests." Turner, 482 U.S. at 89; O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). The Supreme Court in Turner determined that the factors to be considered when evaluating the reasonableness of a policy are: 1) whether there is a rational relationship between the policy and the legitimate government interests asserted; 2) whether the inmate has an alternative means to exercise the right; 3) the impact that accommodation of the right will have on the prison

7

system; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest. Turner, 482 U.S. at 89–90.

The evidence before the Court clearly shows that there was only a minimal or de minimis infringement on Plaintiff's ability to practice his religious views at the Jail. Plaintiff admitted that he was permitted to have a Koran, other religious literature, and a prayer rug while at the Jail. He further admitted to being able to meet with other Muslim inmates who were housed in his housing pod, and Defendant Troutt's undisputed testimony was that Plaintiff could have conducted prayers or meetings with any other Islamic inmates in his housing pod as long as such activity occurred in the communal day room area. Plaintiff failed to offer any evidence that Jail officials took any specific acts to prevent Islamic inmates from practicing their religion.

Plaintiff's complaints about three policies at the Jail fail to support a claim of a constitutional infringement. The Jail's policy of not allowing inmate movement between housing pods and the Jail's policy of requiring non-participating inmates to return to their cells during volunteer activities in the day room area are both reasonably related to the legitimate penological interests of safety and security at the Jail. Furthermore, compliance with these policies simply did not cause an actual infringement upon Plaintiff's ability to practice his Islamic religion. While Plaintiff may disagree with the policies, the restrictions upon inmate movement within the Jail required under the policies are simply realities of the fact of incarceration.

The Jail's prohibition on the wearing of head coverings by inmates in the general population did cause an infringement upon Plaintiff's ability to wear a Kufi. Assuming that the wearing of a Kufi is a part of Plaintiff's Islamic religious beliefs, any infringement caused by this policy was nonetheless valid and constitutional under Turner. The prohibition on head coverings at the Jail is

rationally related to the legitimate penological interests of preventing contraband at the Jail and of preventing security risks that might arise because of gang affiliation issues caused by the color of head coverings. Further, as noted herein, Plaintiff was afforded various other avenues to practice his religion at the Jail. Additionally, Plaintiff offered no evidence that accommodating the wearing of a Kufi could be minimally and easily accommodated or that there were ready alternatives to the policy.[2] Plaintiff's assertion that Christian inmates are permitted to have crosses at the Jail, even if true, is irrelevant to assessing the reasonableness of the policy because such a fact does not involve issues related to head coverings.

Finally, Plaintiff's complaint about the alleged lack of assistance he received from a volunteer chaplain at the Jail simply fails to support a constitutional claim because the evidence before the Court overwhelmingly shows that any action or inaction by the chaplain did not have a negative effect on Plaintiff's ability to practice his religion at the Jail.

## RECOMMENDATION

Based on the foregoing, the Court recommends that this action be DISMISSED WITH PREJUDICE because there are no facts upon which a reasonable jury could find in favor of Plaintiff on his First Amendment claims.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of the Report and Recommendation upon the party and

---

[2] Although the Sixth Circuit has not addressed the constitutionality of a restriction on the wearing of a Kufi by a prison inmate, other courts have upheld policies imposing restrictions and outright bans on religious headwear as reasonably related to security, disciplinary and sanitary considerations. See Young v. Lane, 922 F.2d 370, 375-77 (7th Cir. 1991); Benjamin v. Coughlin, 905 F.2d 571, 578-79 (2d Cir. 1990); Standing Deer v. Carlson, 831 F.2d 1525, 1528 (9th Cir. 1987); Rogers v. Scurr, 676 F.2d 1211, 1215-16 (8th Cir. 1982).

must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                      Respectfully submitted,

                                      _____
                                      JULIET GRIFFIN
                                      United States Magistrate Judge